In re Allen A. DEILE and Werna Deile, .Debtors.

Bankruptcy No. 83–05226.

United States Bankruptcy Court,
D. North Dakota.

June 17, 1985.

Max Rosenberg, Bismarck, N.D., for debtor.

Jack McDonald, Bismarck, N.D., for Central Dakota Bank.

Sean O. Smith, Bismarck, N.D., for Federal Land Bank of St. Paul.

Jerome Kettleson, Bismarck, N.D., for Farmers Home Admin.

William P. Westphal, Minneapolis, Minn., United States Trustee.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Allen and Werna Deile filed for relief under Chapter 11 of the Bankruptcy Code on April 19, 1983. The Debtors initially filed on October 26, 1983, a Disclosure

Statement and Plan of Reorganization. An Amended Disclosure Statement and Modified Plan of Reorganization was later filed by the Debtors on January 25, 1984. The Debtors filed a Second Amended Disclosure Statement on May 23, 1984, which was approved by Order of the Court dated June 14, 1984. A hearing on confirmation of the Chapter 11 Plan was held October 23, 1984. The Court approved confirmation of the Chapter 11 Plan with modifications and ordered that the modified plan be filed within 30 days following the date of hearing. The Debtors failed, however, to file a plan containing the modifications discussed at the confirmation hearing. As a result, Motions to dismiss the bankruptcy case were subsequently filed by Central Dakota Bank of Lehr, North Dakota, and the Federal Land Bank of St. Paul. A hearing on the Motions to Dismiss was held on April 9, 1985, and was continued giving the Debtors 14 days to file another modified plan of reorganization. The Debtors filed on April 24, 1985, a Second Modification of their Plan of Reorganization. The Second Modified Plan did not, however, contain the modifications required by the Court at the previous confirmation hearing. Objections to confirmation of the Second Modified Plan of Reorganization were filed on May 13, 1985, by the Federal Land Bank of St. Paul and the Central Dakota Bank of Lehr, North Dakota. Similarly, the United States of America filed on May 15, 1985, an Objection to confirmation of the Second Modified Plan of Reorganization. A hearing on confirmation of the Debtors' Second Modified Plan of Reorganization was held before the undersigned on May 15, 1985. The Debtors subsequently filed on May 31, 1985, a brief in support of confirmation of their Plan of Reorganization. A Reply Brief in opposition to confirmation of the plan was filed on June 5, 1985, by Federal Land Bank of St. Paul. Central Dakota Bank of Lehr, North Dakota, filed a Response with the Court on June 6, 1985, withdrawing their objections to the Court confirming the Debtors' Second Modified Plan.

## FINDINGS OF FACT

The Debtor, Allen Deile, is primarily a dairy farmer who grows some small grains and maintains a small stock of cattle. Deile testified at trial that at present he has 150 dairy cattle on his farm. Of those numbers, 40 to 45 head of dairy cattle are owned by his sons. The sons are accordingly obligated to pay a prorata share of the dairy expenses. Historically, the sons have failed to meet the obligation of their dairy expenses. The sons failed to make any dairy expense payment in 1983 and fell $18,000.00 short of their expected payments in 1984. The Debtors expect to receive a contribution of approximately $41,000.00 from their sons for their share of the expenses in 1985. Overall, Allen Deile testified that his estimated operating expenses are $180,000.00 per year of which $21,000.00 is set aside for family living. The Debtors project that their total annual income will reach approximately $230,000.00 of which $150,000.00 comes from milk sales. The Debtors estimate that the payments required pursuant to their Plan of Reorganization for retirement of debt will approximate $81,000.00 a year. From the Debtors' own estimates, the Plan of Reorganization is underfunded by $31,000.00. The Debtor suggested at the confirmation hearing that his sons will have to put more money into the operation in order to garner the additional money needed under the Plan of Reorganization.

In addition to the $81,000.00 in annual payments scheduled under the Plan, the Debtors propose to make within six months of confirmation two large payments from the sale of collateral. The Debtor presently has $80,000.00 in a cash collateral account at Central Dakota Bank which was derived from the sale of cattle. Central Dakota Bank has a security interest in this money as proceeds of their collateral. The Debtors have arranged with the Bank for the use of a portion of this cash collateral and propose to pay the greatest portion of their account over on their obligation to Central Dakota Bank. The second large payment which the Debtors propose to make in 1985 comes from the sale of a

section of real estate. The Debtors have been attempting to sell 640 acres of their real estate throughout the bankruptcy proceeding. The Debtors have assigned a value of $92,800.00 to this parcel of real estate and propose upon the sale of the property to pay that amount over to the first mortgage holder, Federal Land Bank. The Debtors have recently proposed that if the real estate is not sold within six months after confirmation of their Plan of Reorganization, they will deed the land over to Federal Land Bank in exchange for a credit against their account of the value which they have assigned to the land. The Farmers Home Administration, who holds a second mortgage interest in the property, has objected to the Debtors' valuation of their real estate contending the property is worth more than the value assigned to it. The Federal Land Bank has, on the other hand, objected to the real estate valuation as being too high. While the Debtors have actively been seeking to sell this parcel of real estate, Allen Deile admitted at the confirmation hearing that he had not listed the property with any realtors.

The Debtor believes there are some positive aspects to his performance during the pendency of his bankruptcy case. The Debtor has been able to operate during the past two years without taking out any operating loans. During that period of time, the Debtors have kept current with all their bills. The Debtors have failed, however, to make any payments to the Farmers Home Administration, Federal Land Bank, and other pre-petition secured creditors. Further, the Debtors have not been able to save any funds during the pendency of their bankruptcy case for funding payments under their proposed Plan of Reorganization.

## CONCLUSIONS OF LAW

A court shall confirm a proposed plan of reorganization only if all provisions of 11 U.S.C. § 1129(a) are met. Section 1129(a)(11) provides that the court shall determine that "[c]onfirmation of the plan is not likely to be followed by the liqui-

dation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). Thus, a court must find that the plan of reorganization is feasible. The Eighth Circuit Court of Appeals has stated when construing the requirement of 11 U.S.C. § 1129(a)(11) that:

"In determining whether [a plan] is feasible, the bankruptcy court has an obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable." *United Properties, Inc. v. Emporium Department Stores, Inc.*, 379 F.2d 55, 64 (8th Cir.1967). Success need not be guaranteed. 5 Collier on Bankruptcy, ¶ 1129.02 at 1129–33 . . .

*In re Monnier Bros.*, 755 F.2d 1336, 1341 (8th Cir.1985). The decision in *Monnier* confirms that the objective of any bankruptcy reorganization is to provide the best opportunity under the circumstances for payment of claims without jeopardizing vested interests in collateral. The Court cannot find in this instance, however, that the plan of reorganization could be termed "workable." The Debtors' own estimates provided at the confirmation hearing indicated that annual income would not be sufficient to support the payments promised under the plan. The Debtors have proposed in their post-hearing brief further modifications of the plan. This again affirms the likelihood that confirmation will be followed by further need for modification or a possible liquidation. Further, performance of the Debtors during the pendency of this case has not shown that they are ready or able to repay their pre-petition obligations. For the past two years, the Debtors have operated at break-even point without making any effort to pay their pre-petition obligations. The Debtors have been unable to set aside any savings during the bankruptcy case. It is difficult for the Court with this reorganization history to find that it is feasible for the Debtors to meet the additional obligations imposed by a confirmed plan of reorganization.

■ The Federal Land Bank of St. Paul has requested by Motion filed with the Court on March 5, 1985, a dismissal of this bankruptcy case. Section 1112(b) of the Bankruptcy Code provides that the court may dismiss a case for cause, including inability to effectuate a plan of reorganization or unreasonable delay by the debtor that is prejudicial to creditors. The Debtors in this case have operated for two years under the protection of the bankruptcy court. During that period of two years, the Debtors have proposed three plans of reorganization. The Debtors have been unable to obtain confirmation of any of the proposed plans of reorganization which they have filed with the Court. The Court believes the Debtors have been given a sufficient opportunity to attempt a reorganization and does not foresee any substantial changes in the near future which would raise the likelihood of reaching a confirmed plan of reorganization.

Accordingly, and for the reasons stated,

IT IS ORDERED:

That confirmation of the Debtors' Second Modified Plan of Reorganization is DENIED, and

That the above-entitled bankruptcy case is DISMISSED.